UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SFR SERVICES, LLC, a/a/o Fairway
Villas at Banyan Trace Condominium
Association, Inc.

      Plaintiff,

v.                                                            Case No: 2:20-cv-583-JLB-NPM

INDIAN HARBOR INSURANCE
COMPANY,

      Defendant.

_____

## ORDER

Plaintiff SFR Services, LLC ("SFR Services") is the purported assignee of an insurance policy issued by Defendant Indian Harbor Insurance Company ("Indian Harbor") to Fairway Villas at Banyan Trace Condominium Association, Inc. ("Fairway Villas"). Indian Harbor denied Fairway Villas's claim for coverage under the policy for damage to the insured property allegedly caused by Hurricane Irma. Fairway Villas assigned its claim for insurance benefits to SFR Services, which then sued Indian Harbor in Florida state court for breach of contract. Indian Harbor removed the suit to federal court, and then moved to dismiss the complaint, arguing that the assignment of benefits from Fairway Villas to SFR Services was invalid under Fla. Stat. § 627.7152. As discussed below, Indian Harbor's motion to dismiss (Doc. 6) is **DENIED**.

## BACKGROUND

The insurance policy was in effect when Hurricane Irma passed through the area allegedly damaging the insured property.  (Doc. 1-1 ¶ 5.)  Fairway Villas submitted an insurance claim to Indian Harbor, which retained an engineer to inspect the property.  (Id. ¶¶ 8, 10.)  On September 5, 2019, Fairway Villas executed an Assignment of Insurance Benefits ("AOB") in favor of SFR Services, "assigning all insurance rights, benefits, and proceeds of [Fairway Villas's] claim to SFR Services."  (Id. ¶ 11.)  SFR Services inspected the insured property and prepared an estimate dated September 28, 2019, totaling $692,452.67 in replacement costs.  (Id. ¶ 22.)  On or about October 26, 2019, Indian Harbor's engineer opined that the damage to the property was not the result of Hurricane Irma.  (Id. ¶ 10.)  As a result, on December 19, 2019, Indian Harbor denied Fairway Villas's claim in its entirety.  SFR Services then retained a professional engineering company, ButlerMatrix, to evaluate the cause and extent of the damage to the insured property.  (Id. ¶ 20.)  In a report dated April 13, 2020, ButlerMatrix set forth its conclusion that the damage to the proper was the result of high winds from Hurricane Irma.  (Id. ¶ 21.)

SFR Services filed a breach of contract action against Indian Harbor in state court on July 10, 2020.  Documents attached to the state court complaint include the insurance policy (Exhibit A) (id. at 9), the AOB (Exhibit B) (id. at 117), the ButlerMatrix report (Exhibit C) (id. at 119), and SFR Services's September 28, 2019

estimate (Exhibit D) (id. at 152).[1]  Indian Harbor removed the state court complaint to this Court on August 12, 2020.  (Doc. 1.)  On August 19, 2020, it moved to dismiss the complaint, arguing that the AOB violates Fla. Stat. § 627.7152 and is therefore invalid and unenforceable.  (Doc. 6.)

## LEGAL STANDARD

A plaintiff states a claim for relief sufficient to avoid a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A court's consideration of a Rule 12(b)(6) motion is limited "to the pleadings and exhibits attached thereto."  Grossman v. NationsBank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotations omitted).

## DISCUSSION

Section 627.7152 of the Florida Statutes ("the Act"), was enacted by the Florida legislature in 2019 to regulate assignment agreements that seek to transfer insurance benefits from the policyholder to a third party.  Specifically, assignment agreements to which the Act applies are defined as:

> [A]ny instrument by which post-loss benefits under a residential property insurance policy or commercial

---

[1] A district court considers the allegations of the complaint and documents attached thereto when analyzing a motion to dismiss.  Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).

> property insurance policy, as that term is defined in s. 627.0625(a), are assigned or transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, remediate, restore, or replace property or to mitigate against further damage.

Fla. Stat. § 627.7152(1)(b).  Some key provisions of the Act impose:  procedural requirements that must be met for an assignment of benefits to be valid (Fla. Stat. § 627.7152(2)(a)-(b)); conditions of the insurance policy to which an assignee must adhere (Fla. Stat. § 627.7152(2)(a)-(b)); record-keeping and cooperation duties on the assignee (Fla. Stat. § 627.7152(3)-(4)); notice requirements regarding an assignee's intent to sue (Fla. Stat. § 627.7152(9)); and specific rules regarding an assignee's right to recover attorney's fees (Fla. Stat. § 627.7152(10)).

At issue in this case is the requirement found in Fla. Stat. § 627.7153(2)(a)(4) (hereinafter "subsection 2(a)(4)") that the assignment "[c]ontain a written itemized, per-unit cost estimate of the services to be performed by the assignee."  Indian Harbor argues that the AOB from Fairway Villas to SFR Services does not satisfy the written estimate requirement in this provision, and that, as a result, the AOB is "invalid and unenforceable" pursuant to subsection 2(d).[2]  Indian Harbor moves to dismiss SFR Services's claims for benefits under the insurance policy because, without a valid assignment of benefits, SFR Services is "without standing to maintain the instant action."  (Doc. 6 at 4.)  Moreover, Indian Harbor contends, the dismissal of the complaint should be with prejudice because SFR Services's "lack of

---

[2] See Fla. Stat. § 627.7152(2)(d) ("An assignment agreement that does not comply with this subsection is invalid and unenforceable.").

standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed." (Id. at 5.)

### A.   WHETHER THE ACT APPLIES TO THE AOB IN THIS CASE

As an initial matter, SFR Services argues that the Court should deny Indian Harbor's motion to dismiss because applying the Act to the AOB here would violate the rule against retroactive application of statutes that affect a party's substantive rights. (Doc. 13 at 3–4.)  SFR Services asserts that, although the AOB was executed after the July 1, 2019, enactment of Fla. Stat. § 627.7152(13) (hereinafter "subsection 13"), which changed the requirements for an insured to assign its benefits under an insurance policy to a third party, the insurance policy was issued prior to the enactment of subsection 13—and the entire Act, of course.  According to SFR Services, applying the Act to an AOB that assigned rights under an insurance policy issued prior to its enactment would alter or impinge substantive rights under the policy that existed before the Act was passed.  The Court disagrees.

Because in this case the statute was enacted after the issuance of the insurance policy, the operative inquiry is whether the statute should apply retroactively.  See Menendez v. Progressive Exp. Ins. Co., Inc., 35 So. 3d 873, 877 (Fla. 2010).  At its core, the Legislature created a new procedure for assignments of benefits that occurred after July 1, 2019.  And statutes setting forth procedures do not impair vested substantive rights.

As an initial matter, it is clear from the text of the Act that the Florida Legislature intended for section 627.7152 to be applied to assignment of benefits agreements entered after its enactment.  See Hartford Underwriters Ins. Co. v.

Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (explaining that a legislative body "says in a statute what it means and means in a statute what it says there") (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992); Jefferson v. State, 264 So. 3d 1019, 1024 (Fla. 2d DCA 2018).

Getting to this answer is quite easy—the Florida Legislature clearly says that the Act applies "to an assignment agreement executed on or after July 1, 2019." Fla. Stat. § 627.7152(13).  Here,  the assignment agreement from Fairway Villas to SFR Services was executed on September 5, 2019, which is two months after the enactment of the Act.  (See Doc. 1-1 at 117.)  Thus, the plain and unambiguous language of subsection (13) shows that the Act clearly applies to Fairway Villas's AOB to SFR Services here.

But SFR Services urges the Court to disregard when the AOB was executed but instead focus on when the insurance policy itself was entered between it and Fairway Villas.  In other words, SFR Services contends that, although the AOB was executed after July 1, 2019, the insurance policy was issued prior to that date. According to SFR Services, applying the Act to an AOB that assigns rights under an insurance policy that was issued prior to the Act's passage would alter or impinge substantive rights.

SFR Services relies on Menendez v. Progressive Express Insurance Co., 35 So. 3d 873 (Fla. 2010).  Menendez involved the Florida Legislature's inclusion of pre-suit requirements to recover personal injury protection ("PIP") benefits under an automobile insurance policy.  Id. at 874.  The Supreme Court of Florida noted

that, under the general rule, "the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract." Id. at 876.  In that case, the insurance policy had been issued before the statute in question was enacted.  Nevertheless, the Supreme Court of Florida determined that, contrary to the above-stated general rule, the Legislature did in fact intend to apply the new statute to insurance policies that were already in effect when the statute was passed.  The court therefore was faced with the question of whether it should adhere to the legislative intent, or instead hold to the general rule that a new statute does not apply to previously executed insurance policies.  Ultimately, the court found that applying the statute retroactively to those seeking PIP benefits under previously executed insurance policies would impinge those persons' substantive rights that were created prior to the Florida Legislature's enactment of the new statute; and, therefore, the new statute could not be retroactively applied. Id. at 877.[3]

SFR Services's reliance on Menendez is misplaced.  In Menendez, the substantive rights that were affected by the new statute were rights under the insurance policy and vested in the parties when they entered the insurance

---

[3] The rationale for this rule is grounded principally in due process.  See Metro. Dade Cnty. v. Chase Fed. Hous. Corp., 737 So. 2d 494, 503 (Fla. 1999) ("[R]etroactive abolition of substantive vested rights is prohibited by constitutional due process considerations.") (internal citation omitted).  Another rationale for this rule is grounded in parties' constitutional right to contract.  See N. Carillon, LLC v. CRC 603, LLC, 135 So. 3d 274, 275 (Fla. 2014) (holding that a statutory provision providing for the retroactive effect of a new law "would be unconstitutional if the [new law] substantively changed the prior law and impaired the existing right of [the contracting parties]").

contract.  The import of a new pre-suit requirement, the <u>Menendez</u> court held, deprived the vested, substantive rights of the insured and insurer under existing policies.  Therefore, the statute could not be applied retroactively to insurance policies already in existence.  Here, however, subsection 2(a)(4) does not affect substantive rights under the insurance policy; <u>it establishes procedural requirements for the effective formation of the AOB</u>.  The focus is on the date the assignment of benefits was executed, not the insurance policy, as was the situation in <u>Menendez.</u>  The AOB here was undisputedly executed <u>after</u> the effective date of the Act, and therefore applying the Act to the AOB does not amount to an impermissible retroactive application.  Instead, applying the expressed legislative intent in the Act is consistent with the general rule cited by <u>Menendez</u>, 35 So. 3d at 876, that the law in effect at the time the contract in question is executed controls.

SFR Services also cites <u>JPJ Cos., LLC v. Hartford Insurance Co.</u>, No. 9:19-CV-81696, 2020 WL 264673, at *2 (S.D. Fla. Jan. 17, 2020), a case that raised the retroactivity issue in the context of the present Act.  There, the court said it did "not read Fla. Stat. § 627.7152 as reflecting an intent by the Florida Legislature for the change to § 627.7152(10) to apply retroactively."[4]  Moreover, the court said, even if

---

[4] To determine whether application of the Act in that case would in fact be retroactive, the <u>JPJ Co.</u> court did not use the July 1, 2019 effective date in subsection 13.  Instead, the court noted that the effective date of subsection 10 of the Act was May 24, 2019.  2020 WL 264673, at *1.  The reason subsection 10 of the Act dealing with attorney's fees has a different effective date than the rest of the Act is explained by Magistrate Judge McCoy from this District in <u>Castilla Roofing, Inc. v. Hartford Ins. Co.</u>, No. 2:19-cv-613, 2020 WL 821051, at *2 (M.D. Fla. Jan. 20, 2020) (stating that Florida House Bill 337, which was the version of the Act Governor DeSantis signed into law, provided that, "'[n]otwithstanding subsection 13

the Legislature expressed an intent to apply the Act retroactively to insurance policies issued prior to the date on which subsection 10 became effective, the court would not apply it as such because the limitations in subsection 10 on the right to recover attorney fees would impair substantive rights under the insurance policy. JPJ Cos., 2020 WL 264673, at *2.

JPJ Cos. did not raise the issue of retroactive application for purposes of determining the validity of an assignment of benefits under subsection 2 of the Act. Instead, the issue was whether subsection 10 of the Act—the provision dealing with the recovery of attorney's fees—applied retroactively to determine whether and in what amount the plaintiff could recover attorney's fees under an assignment of benefits. See id. at *1-2. The date on which the assignment of benefits was executed was never argued by the parties as being relevant to the court's retroactivity analysis regarding subsection 10. Instead, the focus of the parties' arguments, and the court's ruling, was the date on which the insurance policy was executed. Here, the focus must be the date on which the assignment was executed, not the date on which the insurance policy was issued. The reason is that subsection 2, unlike subsection 10, imposes procedural requirements for assignment of benefits to be valid and enforceable. And those requirements only affect rights under the assignment of benefits, not substantive rights under the insurance policy,

of section 627.7152, as created by HB 7065, 2019 Regular Session, subsection (10) of that section is effective upon becoming a law [i.e., on May 24, 2020, when Governor DeSantis approved the Act]'") (citations omitted).

which vested upon the insured and insurer's execution of the insurance policy agreement.

In short, subsection 2(a)(4) does not affect <u>whether</u> benefits under a policy can be assigned but only <u>how</u> that assignment can be accomplished—in other words, the procedures that need to be followed.[5]  Thus, applying subsection 2(a)(4) to determine whether the AOB is valid and enforceable does not affect already vested substantive contractual rights of either SFR Services or Fairway Villas, <u>as set forth in the insurance policy</u>.  Because the Act was the law "in effect at the time" the AOB was executed, its application to any "substantive issues arising <u>in connection with that contract</u>," <u>Menendez</u>, 35 So. 3d at 876 (emphasis added)—<u>i.e.</u>, in connection with the AOB—does not run afoul of any impermissible retroactivity principle under Florida law.  Accordingly, there is no basis for the Court to disregard the plain, textual directive of the Act applying it to assignments of benefits executed after July 1, 2019.  <u>See</u> Fla. Stat. § 627.7152(13).  SFR Services's arguments to the contrary are rejected.

### B.  WHETHER INDIAN HARBOR MAY CHALLENGE THE VALIDITY OF THE ASSIGNMENT

The Court next considers SFR Services's argument that the motion to dismiss should be denied because Indian Harbor may not assert the AOB's lack of

---

[5] While the insurance policy gave rise to the substantive right of the insured to assign the policy, <u>see</u> <u>Cont'l Cas. Co. v. Ryan Inc. E.</u>, 974 So. 2d 368, 377 n.7 (Fla. 2008) (insurer may not preclude post-loss assignments of insurance benefits), that right is not affected by subsection 2(a)(4).  Again, subsection 2(a)(4) does not affect <u>whether</u> benefits under a policy can be assigned but only <u>how</u> that assignment can be accomplished—the procedures to create a valid, enforceable AOB.

compliance with the requirements of subsection 2(a)(4) of the Act as a defense to SFR Services's suit to recover benefits allegedly owed by Indian Harbor under the insurance policy. SFR Services contends Indian Harbor is not in "privity" with the contracting parties under the AOB, and therefore does not have the right to enforce the requirements of that subsection against SFR Services. (Doc. 13 at 6-7.) Indian Harbor, however, argues it can raise the lack of compliance issue because, without a valid assignment of benefits, SFR Services does not have "standing" to sue Indian Harbor to recover benefits allegedly owed to Fairway Villas under the insurance policy.

Indian Harbor is correct that a party who sues to enforce a legal obligation must have "standing" to bring suit. "Standing," in this context, refers to the person or entity who "owns" the cause of action against the defendant. See Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005). For a provider of repair services such as SFR Services "to bring an action [for property insurance benefits], the insured [here, Fairway Villas] must assign [its] right to such benefits under the policy to the [service provider]." Id. Accordingly, the AOB here "is not merely a condition precedent to maintain an action on a claim held by the person or entity who filed the lawsuit. Rather, it is the basis of [SFR Services's] standing to invoke the processes of the court in the first place." Id.

But Indian Harbor's reliance on Progressive Express Insurance is misplaced. In that case, it was undisputed that the assignment of benefits purportedly giving

rise to the assignee's standing to sue was unexecuted when the assignee filed suit. Id. at 1285.  The court therefore held that the assignee did not "own" the cause of action when it filed suit.  Id.  The court then addressed the question of whether the assignee could maintain the lawsuit by having the assignment executed after the filing of the action.  Citing the rule that standing to bring suit is evaluated at the time the lawsuit is filed, the court held the assignee could not cure the defect of the unexecuted assignment by presenting an executed assignment once the proceedings were already underway.  Id. 1285-86.

The facts here are different.  The assignment in Progressive Express Insurance was unexecuted when the lawsuit was filed and did not come into existence until it was later executed after commencement of the lawsuit.  Here, though, the AOB was executed on September 5, 2019, before this lawsuit was filed. The executed AOB means SFR Services had standing when it initiated the cause of action.  See AMC Gerber Chiropractic L.L.C. v. GEICO Gen. Ins., 925 F.3d 1205, 1211 (11th Cir. 2019) (an assignee "stands in [the assignor's] shoes") (citing Houk v. C.I.R., 173 F.2d 821, 825 (5th Cir. 1949) ("an assignee . . .  stands in the same position as its assignor had stood")); see also Shreve Land Co. v. J & D Fin. Corp., 421 So. 2d 722, 724 (Fla. 3d DCA 1982) ("The law is well settled that an assignee succeeds to his assignor's rights under the assignment of a contract.").  That Indian Harbor now seeks to declare the executed AOB invalid or unenforceable does not retroactively change the assignee status of SFR Services at the time the lawsuit was filed.  It instead presents a different question than the "standing" issue decided

in <u>Progressive Express Insurance</u>:  whether a defendant may seek to invalidate an executed assignment as a defense to a suit by the assignee to recover the assigned benefits.[6]

Under common law principles applicable to assignments, the following defenses can be asserted by a debtor against an assignee of the debt:  "A debtor . . . may generally assert against the assignee all equities or defenses existing or acquired against the assignor prior to the time that the debtor received notice of the assignment."  6A C.J.S. Assignments § 133.  In other words, Indian Harbor may assert as a defense against SFR Services's suit under the insurance policy only those defenses that it could have raised if the suit had been brought by Fairway Villas.  With regard to defenses based on the assignment itself, the applicable common law rule is:

> [T]he debtor may assert as a defense any matter which renders the assignment <u>absolutely invalid or ineffective, or void, such as, the nonassignability of the right</u>

---

[6] The issue is often framed as a question of whether a non-party to a contract has "standing" to challenge the validity of a contract.  The use of the term "standing" in this sense means statutory or contractual standing, which is different from Article III, subject matter jurisdictional "standing."  <u>See, e.g.</u>, <u>Steely v. Allstate Indem. Co.</u>, Case No. 1:11-CV-517, 2012 WL 13026848, at *3 n.4 (S.D. Ohio July 9, 2012).  The varying and different concepts to which the label "standing" has been attached can be confusing.  For instance, the term "standing" is used by the parties here in at least two different ways:  Indian Harbor asserts SFR Services lacks "standing" to sue under the policy because the AOB is invalid, while SFR Services asserts that Indian Harbor lacks "standing" to raise the validity issue because it is not a party to the assignment.  Given that the parties are making multiple and different "standing" arguments in this case, and because Article III standing cases are not pertinent to whether Indian Harbor may assert the invalidity of the AOB as a defense to SFR Services's breach of contract claim, the Court will avoid using the term "standing" in the discussion that follows.

> <u>attempted to be assigned, or a prior revocation of the</u>
> <u>assignment</u>.  . . .
>
> Obligors of a claim <u>may not defend on any ground which</u>
> <u>renders the assignment voidable only</u>, because the only
> interest or right which an obligor of a claim has in the
> instrument of assignment is to insure himself or herself
> that he or she will not have to pay the same claim twice.

<u>Id.</u> (emphasis added).  It appears that Florida courts apply the common law void

versus voidable distinction when a challenge is raised to the enforceability of any

contract.  <u>See, e.g.</u>, <u>Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.</u>, 761

So. 2d 306, 313 (Fla. 2000) ("It is axiomatic that fraudulent inducement renders a

contract voidable, not void.").

Thus, the issue before the Court is whether an assignment of benefits that

fails to comply with the requirements of subsection (2)(a)(4) is void, or whether it is

merely voidable.  Put differently, if the AOB at issue here is merely voidable, rather

than void, then Indian Harbor cannot seek to invalidate the assignment.  Neither

party discusses this issue in its briefing.  The type of defects that fall into the "void"

category appear to be very limited.  Only two examples, neither of which apply here,

are given in 6A C.J.S. Assignments § 133:  the nonassignability of the right

attempted to be assigned, or a prior revocation of the assignment.  The reason for

this narrow focus appears to be that, generally speaking, the defendant has no

interest in challenging the validity of the assignment; the defendant's only interest

is <u>whether</u> he is liable, not <u>to whom</u> he is liable.  <u>See, e.g.</u>, <u>Livonia Prop. Holdings,</u>

<u>L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.</u>, 717 F. Supp. 2d 724, 735

(E.D. Mich. May 13, 2010) (the assignment's validity "does not effect [sic] <u>whether</u>

[the defendant] owes its obligations, but only to <u>whom</u> [the defendant] is obligated.") (emphasis in original), <u>aff'd</u>, 399 F. App'x 97 (6th Cir. 2010); 29 Williston on Contracts § 74:50 (4th Ed.) ("[T]he debtor has no legal defense [based on invalidity of the assignment] . . . for it cannot be assumed that the assignee is desirous of avoiding the assignment.").

Absent a challenge to the validity of an assignment that, if successful, would result in a finding that the assignment was void ab initio, the case law generally holds that the defendant cannot raise a validity argument.  <u>See</u> <u>Progressive Express Ins. Co.</u>, 913 So. 2d at 1289 (Davis, J. specially concurring) (stating that a third party to the assignment agreement between assignor and the assignee "is not entitled to make" the argument that the assignment is invalid).[7]

The only argument Indian Harbor makes that might suggest a noncomplying AOB is void as opposed to merely voidable is its argument based on the language of subsection (2)(d), which provides that assignments of benefits that do not comply with the Act are "invalid and unenforceable," Fla. Stat. § 627.7152(2)(d).  (<u>See</u> Doc.

_____

[7] <u>See also</u> <u>Lewis v. U.S. Bank Nat'l Ass'n</u>, 740 F. App'x 155, 156–57 (9th Cir. 2018) ("Lewis lacks standing to challenge the assignments because, at most, his challenges would make them voidable."); <u>Reinagel v. Deutsche Bank Nat'l Tr. Co.</u>, 735 F.3d 220, 228 (5th Cir. 2013) (holding that, "facially valid assignments cannot be challenged for want of authority except by the defrauded assignor"); <u>Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.</u>, 399 F. App'x 97, 102 (6th Cir. 2010) ("[T]here is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment.") (internal quotation marks omitted); <u>Pratap v. Wells Fargo Bank, N.A.</u>, 63 F. Supp. 3d 1101, 1110 (N.D. Cal. 2014) (holding that a nonparty "lack[s] standing to challenge voidable assignments; only the parties to the assignments may seek to avoid such assignments") (citation and quotation omitted).

20 at 7.)  Indian Harbor asserts—without support or analysis—that this statutory language means that a noncomplying assignment "is automatically deemed invalid **by operation of law**."  (Id. at 7 (emphasis in original).)  But whether that is in fact the case is not plainly obvious.  See, e.g., 5 WILLISTON ON CONTRACTS § 12:4 (4th ed.) ("Statutes may and sometimes do make bargains absolutely void, but even though a statute states in its terms that a particular bargain is 'void,' this has often been held to mean 'voidable.').[8]  Section 2(d) does not use the word "void"; it states noncomplying AOBs are "invalid and unenforceable."  This language does not clearly and unambiguously mean that Indian Harbor, as the debtor, may assert invalidity and unenforceability as a defense to an action on the underlying insurance policy.

To begin with, the meaning of "unenforceable" is not the same as the word "void."  To be declared unenforceable, there normally would have to be an attempt at enforcement first.  And the law clearly would not allow Indian Harbor, as a nonparty to the AOB, to "enforce" it.  See Gallagher v. Dupont, 918 So. 2d 342, 347

---

[8] This is particularly true where the alleged defect, as here, relates to a failure to comply with a statutory requirement going to the formation of the contract rather than a contract that seeks to accomplish a purpose or contains rights or obligations that are contrary to statutory law.  Compare Lugassy v. Indep. Fire Ins. Co., 636 So. 2d 1332, 1335 (Fla. 1994) (where an entity "was neither a party to the contract nor a third-party beneficiary, [ ] it cannot argue that there was lack of consideration" for that contract); Davenport & Co. v. Spieker, 197 Cal. App. 3d 566, 242 Cal. Rptr.922 (1988) (oral contract for home improvement held not "automatically void" even though a state statute required such agreements to be in writing), with Gables Ins. Recovery, Inc. v. Citizens Prop. Ins. Corp., 261 So. 3d 613 (Fla. 3rd DCA 2018) (assignment permitting recovery of public adjuster fee in excess of what was permitted by state statute held void).

(Fla. 5th DCA 2005) ("A person not a party to nor in privity with a contract has no right to enforce it.").  If Indian Harbor cannot enforce the AOB, it would seem to follow that it also cannot seek to declare it "unenforceable."  Moreover, since the statute refers to a noncomplying AOB as "invalid <u>and</u> unenforceable," it appears the Legislature intended the word "invalid" to mean the same thing as the word "unenforceable," so that, if "unenforceable" is not the equivalent of "void" then neither is "invalid."

Even if the statutory terms "invalid and unenforceable" <u>could</u> mean "void," they could <u>also</u> mean voidable.  So the question of whether a noncomplying AOB is void or merely voidable cannot be answered merely by referring without further analysis to the statutory language "invalid and unenforceable."  Typically, in determining whether a contract is void or merely voidable, courts will "begin[ ] with the presumption that contracts are voidable unless they clearly violate public policy."  <u>New Testament Baptist Church Inc. v. State, Dep't of Transp.</u>, 993 So. 2d 112, 116 (Fla. 4th DCA 2008) (citing <u>Ockey v. Lehmer</u>, 189 P.3d 51 (Utah 2008)).

> In general, the difference between void and voidable contracts is whether they offend public policy.  Contracts that offend an individual, such as those arising from fraud, misrepresentation, or mistake, are voidable.  Only contracts that offend public policy or harm the public are void ab initio.

<u>Id.</u> (quoting <u>Ockey</u>, 189 P.3d at 56-57, and also citing BLACK'S LAW DICTIONARY 1604 (8th ed. 2004) ("A contract is void ab initio if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one party to the contract.")).

Indian Harbor argues that the purpose of the written estimate requirement in subsection 2(a)(4) "is to provide full disclosure to an insured at the time the insured assigns his/her post-loss benefits to an assignee, including a disclosure of the services that are to be provided by the assignee."  (Doc. 6 at 4.)  In other words, by Indian Harbor's own admission, the purpose of the requirement at issue here appears to be to protect the rights of one party, namely, the policyholder who assigned its right to recover under the policy against the insurance company.  That conclusion would result in a finding that a non-complying AOB is merely voidable.  See, e.g., Wilson v. HSBC Mort. Servs., Inc., 744 F.3d 1, 9 (1st Cir. 2014) ("'[V]oidable' refers to a contract or agreement that is injurious to the rights of one party, which he may avoid at his election.  Thus, while the party injured by a voidable contract has the option of avoiding its obligations, it may choose instead to ratify the agreement and hold the other party to it.") (internal quotation marks and citations omitted).

Indian Harbor argues separately (and without any supporting citations) that the purpose of the Act was "to address rampant litigation stemming from assignment of benefits agreements."  (Doc. 6 at 3.)  Parts of the Act certainly protect the interests of insurance companies vis a vis service providers/assignees.  But other parts—and, in particular, the formation requirements in subsection 2 for creating an enforceable assignment of benefits—appear to protect the interests of policyholders/assignors vis a vis service providers/assignees.  Indian Harbor exclaims (somewhat hyperbolically):  "[H]olding that an insurance carrier could not

ask the court to hold that an AOB is invalid due to noncompliance with the statutory requirements would render [section] 627.7152, Florida Statutes, useless, as it is the insurance carriers against whom lawsuits are brought by the assignees." (Doc. 20 at 7-8.)  A holding in this case regarding the validity the AOB under subsection 2(a)(4), however, would have no bearing on other parts of the Act that directly address rights of insurance companies *vis a vis* assignees pertaining to matters other than issues related to the formation of the assignment.  The Act as a whole, therefore, would not be rendered "useless," even if the Act were deemed to have been enacted solely for the benefit of insurance companies.

But in any event, Indian Harbor has provided no authority for its assertion that the Act should be viewed solely from the perspective of the insurer's interests. It is quite possible the Florida Legislature, in regulating post-loss assignees of benefits under an insurance policy, had the interests of both insureds and insurers in mind (as Indian Harbor itself argues in its brief (Doc. 6 at 4)).[9]  Therefore, it is not illogical to conclude that subsection 2(a)(4) was intended to provide a basis for policyholders to challenge AOBs, not to provide a basis for insurance companies to avoid suits brought pursuant to AOBs.[10]

---

[9] Policy arguments raising both the interests of insureds (favoring fewer restrictions on assignability) as well as the interests of insurers (favoring greater restrictions on assignability) were before the Florida Legislature in its consideration of the Act. See Sec. First Ins. Co. v. Fla. Office of Ins. Reg., 232 So. 3d 1157, 1160 (Fla. 5th DCA 2017).

[10] For example, subsection 2(a)(2) provides that an assignment must "[c]ontain a provision that allows the assignor to rescind the assignment agreement."  Fla. Stat. § 627.7152(2)(a)(2) (emphasis added).  By its terms, this provision was intended to be enforced against the assignee by the insured, not by the insurer.  By contrast, the

All this is to say that, whether an assignment of benefits is void ab initio if it does not comply with subsection 2(a)(4) of the Act requires legal argument beyond that which has been provided by the parties in the present briefing.[11]  While Indian Harbor may be correct that the Florida Legislature intended that insurers could raise the validity issue in suits brought by assignees of insureds, the Court is not prepared at this time to rule in favor of Indian Harbor on that public policy question when there is "over a century" of case law "from state and federal courts around the country" that holds "a litigant who is not a party to an assignment lacks standing to challenge that assignment." Livonia Prop. Holdings, 717 F. Supp. 2d at 736-37 (citing cases).  Should Indian Harbor wish to present argument or evidence on this issue at some later point in these proceedings (such as in a motion for summary judgment), it is certainly free to do so.  At present, the record is insufficient for this Court to resolve the legal question raised by Indian Harbor's argument, and so the Court cannot grant the motion to dismiss on this basis.

---

only portion of subsection 2 expressly noting an insurance company's "rights" is the requirement that the assignee provide the insurance company a copy of the assignment within a certain time frame and in a certain manner.  See id. § 627.7152(2)(a)(3).

[11] Indian Harbor cites a state trial court case that ruled in favor of an insurance company's challenge to an assignment of benefits for failing to comply with the written estimate requirement of subsection 2(a)(4).  See Apex Roofing & Restoration, LLC v. Sec. First Ins. Co., 2020 WL 4726815 (Fla. Cir. Ct. Aug. 11, 2020).  But based on its citation without discussion of Progressive Express Insurance, the decision assumed the AOB was automatically void from its inception due to noncompliance with subsection 2(a)(4), without any discussion or analysis of the legal principles in this order.

C.   **WHETHER THE AOB COMPLIES WITH SUBSECTION (2)(a)(4)**

In addition to the above, SFR Services argues that the AOB in any event satisfies the requirements of subsection 2(a)(4).  SFR Services attaches to its response to Indian Harbor's motion to dismiss a copy of an email, which it represents was sent to a claims representative for Indian Harbor on September 5, 2019.  The email attached the following documentation:

a.   Executed Assignment of Insurance Benefits;

b.   Signed W9 for SFR Services;

c.   Brochure from the Florida Department of Financial Services regarding AOB contracts);

d.   Insurer's duties under Section 627.7013(5)(a), Fla. Stat.;

e.   Written, itemized, per-unit cost estimate of the services to be performed; and

f.   Photos of the damage.

(Doc. 13 at 4.)  SFR Services also attaches to its response a copy of item e, the "written, itemized, per-unit cost estimate of the services to be performed.  It explains that the estimate was prepared using the Xactimate platform, which is the industry standard in estimating insurance claims throughout the country.  (Id.)  The estimate is about nine pages long and include sketches of the applicable buildings.  (Doc. 13-2.)  SFR Services asserts it "is nonsense" to interpret the Act to require the actual AOB itself include within its pages the detailed line-item estimate that is generated by the Xactimate estimating platform.  (Doc. 13 at 6.)  According to SFR Services, "by submitting its AOB to Indian Harbor simultaneously

with its "written, itemized, per-unit cost estimate of the services to be performed," it has complied "with the intent of and the plain language of" subsection 2(a)(4).  (<u>Id.</u>)

In response, Indian Harbor argues that the Court should not consider the attachments to SFR Services's response brief because they are outside the four corners of the Complaint.  (Doc. 20 at 5.)  Indian Harbor itself argues, however, that the alleged invalidity of the AOB is an affirmative defense.  <u>See</u> Doc. 6 at 3 (stating that "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as it clearly appears on the face of the complaint." (quoting <u>inter alia</u> <u>Quiller v. Barclays Am./Credit</u>, 727 F.2d 1067, 1069 (11th Cir. 1984))).  SFR Services was not required to anticipate and negate Indian Harbor's affirmative defense in its Complaint.  <u>See</u> <u>Sec'y of Lab. v. Labbe</u>, 319 F. App'x 761, 764 (11th Cir. 2008) (citing <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004)).  SFR Services refers to documents outside the Complaint only to rebut Indian Harbor's affirmative defense.  The Court can take judicial notice of the existence of these documents[12] for purposes of deciding the legal question of whether those documents raise a possible basis for refuting Indian Harbor's assertion that the AOB is invalid.[13]

---

[12] Indian Harbor does not dispute that it received an email with an estimate attached, but it does dispute that the estimate it received was the same one attached to SFR Services's response brief.  (Doc. 20 at 5 n.3.)  The Court does not need to resolve that issue as the only pertinent question at this point is whether SFR Services included an estimate with the AOB, which apparently is not disputed by Indian Harbor.

[13] If the Court were to grant Indian Harbor's motion to dismiss because the documents are not part of the Complaint, it would have to then permit SFR Services to amend the Complaint for the purpose of attaching those documents.  <u>See</u> Fed. R.

Aside from asserting a procedural bar to the Court's consideration of the documents attached to SFR Services's response brief, Indian Harbor also argues that subsection 2(a)(4) requires by its plain language that the "estimate be **_contained within the AOB itself_**."  (Doc. 20. at 5-6 (emphasis in original).)  But Indian Harbor re-writes the statutory language, which actually says only that the AOB must "<u>contain</u> a written, itemized" estimate.  The word "contain" <u>can</u> mean, consistent with Indian Harbor's argument, "to hold or include <u>within its volume or area</u>."  https://www. dictionary.com/browse/contain.  But it also can mean "to have as contents or constituent parts, comprise; include."  <u>Id.</u>

Under the contemporaneous instrument rule," "two or more documents executed by the same parties, at or near the same time, concerning the same transaction or subject matter are generally construed together as a single contract."  <u>Wilson v. Terwillinger</u>, 140 So. 3d 1122, 1124 (Fla. 5th DCA 2014).  Indian Harbor points out SFR Services has shown only that the Xactimate estimate was provided to <u>Indian Harbor</u> at the same time as the AOB was executed; it has not shown whether it was provided to <u>Fairway Villas</u> at the same time.  (Doc. 20 at 6.)  But again, SFR Services is not required to anticipate Indian Harbor's affirmative defense in the Complaint.  The question is whether Indian Harbor has shown that the affirmative defense of invalidity is apparent on the face of the AOB itself.  If the statute is construed to allow consideration of a simultaneously executed document

---

Civ. P. 15(a) (amendments to pleadings are to be freely given).  It would be a pointless exercise to dismiss now only to be faced with the very same issue on a motion to dismiss an amended complaint with the documents in question attached.

not contained "within" the AOB itself, then the AOB by itself does not irrefutably establish the existence of the affirmative defense.

The question then is whether it is plausible that the statute permits consideration of a separate document from the AOB itself but provided simultaneous with the AOB such that it can be considered part of that contract.  On the one hand, the language of the statute does suggest that the written estimate be actually included within the four corners of the AOB itself.  On the other hand, it would seem odd to require the Xactimate estimate be reproduced as part of the legal document of assignment.  Since the parties' briefing provides only a superficial discussion of this issue of statutory interpretation, the Court declines to rule on it at this time.

### D.   WHETHER THE COMPLAINT IS SUBJECT TO DISMISSAL WITH PREJUDICE IF THE AOB DOES NOT COMPLY WITH SUBSECTION 2(a)(4)

Finally, SFR Services argues that, if the Court concludes (1) the Act applies, (2) Indian Harbor can challenge the validity of the AOB, and (3) the AOB violates subsection 2(a)(4), then the remedy is to substitute either a conforming AOB or else Fairway Villas as the plaintiff.  (Doc. 13 at 7.)  Indian Harbor argues, based on Progressive Express Insurance, that no form of substitution would be valid, because SFR Services lacked standing from the inception of the case.   (Doc. 6 at 5.)

Indian Harbor's argument presumes that a nonconforming AOB would be void ab initio.  In other words, its argument treats the question of SFR Services's "standing" as if it implicates Article III jurisdictional standing.  But the issue of

whether the AOB is valid is a merits question of contractual standing, not Article III standing.  See, e.g., Perry v. Thomas, 482 U.S. 483, 492 (1987) (holding that the question of whether the elements of a breach of contract claim are satisfied—including the question of whether the contract exists—goes to the merits, not to a court's power to resolve the controversy); see also SM Kids, LLC v. Google LLC, 963 F.3d 206, 212 (2d Cir. 2020) (stating that a litigant's "threshold" argument that an assignment is not valid does not call into question the "justiciability of the dispute" but rather raises the issue of whether the plaintiff states a claim for relief).[14]

Given that the "standing" issue raised by Indian Harbor here is not an Article III jurisdictional issue, declaring the AOB invalid and unenforceable would suggest that the cause of action against Indian Harbor would in fact belong to Fairway Villas, and that Fairway Villas could thereafter be substituted under Federal Rule of Civil Procedure 17(a)(3).[15]  But the Court need not resolve this issue at this time.  If the AOB is declared unenforceable and invalid at some point later in these proceedings, the parties can address the proper remedy with briefing that discusses

---

[14] Indian Harbor appears to recognize as much, since it filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) rather than a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

[15] In Progressive Express Insurance, on which Indian Harbor relies, the remedy rejected by the court was the execution of the assignment to thereby confer standing on the assignee after the lawsuit was filed.  If, when suit was filed, SFR Services had a contractual right to sue due to an executed AOB, but then later lost that right as the result of a court ruling that the AOB was invalid, that loss appears to raise a real-party-in-interest problem, not a "standing" problem.

the pertinent legal rules and authority in greater depth than they have in the current briefing.

### CONCLUSION

For the foregoing reasons, Indian Harbor's Motion to Dismiss (Doc. 6) is **DENIED**.

**ORDERED** in Fort Myers, Florida this 26th day of March 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE